**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| CORE DISTRIBUTION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE WORLD TRADE CORPORATION, et al.,<br><br>Defendants. | Case No. 1:24-cv-24110-RKA<br><br>Hon. Roy K. Altman |

**DEFENDANTS THE WORLD TRADE CORP.; AUSTRAM LLC; ALEXANDER JOCH; FREDERICK JOCH; CHRISTOPHER JOCH; AND FRANCISCO CRUZ'S MOTION TO DISMISS PLAINTIFF CORE DISTRIBUTION INC.'S COMPLAINT UNDER RULES 12(B)(2), (3), (5), AND (6) AND 12(E)**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........................................ 1

II. FACTUAL BACKGROUND ........................................ 2

III. LEGAL STANDARD ........................................ 4

A. Rule 12(b)(6) and 12(e) and Shotgun Pleadings ........................................ 4

B. Rule 12(b)(6) and *Twombly / Iqbal* ........................................ 5

C. Rule 12(b)(6) and Marking ........................................ 5

D. Rule 12(b)(2) ........................................ 6

E. Rule 12(b)(3) ........................................ 6

F. Rule 12(b)(5) ........................................ 7

IV. ARGUMENT ........................................ 7

A. All Claims (Counts I-III) Should Be Dismissed Against All Defendants Because the Complaint is an Impermissible Shotgun Pleading ........................................ 7

B. The Conspiracy Claim (Count I) Should Be Dismissed Against All Defendants ........................................ 9

*i. CDI's Complaint Fails to State a Claim under Rule 12(b)(6) for Civil Conspiracy* ........................................ 9

*ii. Count I Also Fails Under the Intra-Corporate Conspiracy Doctrine* ........................................ 10

*iii. Count I is Further Preempted by Federal Patent Law* ........................................ 11

C. CDI's Tortious Interference Claim (Count III) Should be Dismissed Against All Defendants ........................................ 11

*i. CDI Fails to State a Claim for Tortious Interference Under Rule 12(b)(6)* ........................................ 11

## TABLE OF CONTENTS—CONTINUED

**Page**

*ii. Issue Preclusion Bars CDI From Recovering Damages Related to its Lost Business Relationship With Sherwin (Count II)* ....................................14

*iii. Claim Preclusion Bars CDI's Tortious Interference Count II Against All Defendants* ....................................16

D. Pre-Suit Damages for The Patent Infringement Claim (Count III) Should be Dismissed Because CDI Failed to Plead Compliance with the Marking Statute ....................................17

E. CDI Fails to Allege Facts Showing Willful Infringement Against Any Defendant ....................................17

F. The Court Should Dismiss All Claims Against the Individual Defendants Under Rules 12(b)(2), (3), (5), and (b) ....................................18

*i. The Complaint Fails to Plead Venue as to the Individual Defendants*....................................18

*ii. The Complaint Alleges No Infringing Acts by the Individual Defendants* ....................................18

*iii. Defendant Alexander Joch Was Not Properly Served with the Complaint* ....................................19

*iv. The Complaint Fails to Allege Personal Jurisdiction Over Defendant Francisco Cruz* ....................................20

V. CONCLUSION....................................20

CERTIFICATE OF SERVICE ....................................21

# TABLE OF AUTHORITIES

**Pages**

## CASES

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) ....................5, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 12

*Automotive Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*,
953 F.3d 707 (11th Cir. 2020) ....................8

*Baloco v. Drummond Co.*,
767 F.3d 1229 (11th Cir. 2014) ....................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................5

*CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*,
327 F.3d 1309 (11th Cir. 2003) ....................14

*Express Mobile, Inc. v. DreamHost LLC*,
No. 1:18-cv-01173-RGA, 2019 WL 2514418 (D. Del. June 18, 2019) ....................17

*Fox v. Loews Corp.*,
309 F. Supp. 3d 1241 (S.D. Fla. 2018)....................8

*GLD, LLC v. 6 Ice, LLC*,
No. 21-CV-21706-CIV, 2021 WL 4502289 (S.D. Fla. Oct. 1, 2021) ....................7

*Grider v. City of Auburn, Ala.*,
618 F.3d 1240 (11th Cir. 2010) ....................10

*Halbig v. Lake Cnty., Fla.*,
No. 23-11875, 2024 WL 470420 (11th Cir. Feb. 7, 2024)....................5

*Harding v. Transunion LLC*,
No. 23-23775-CIV, 2024 WL 4826448 (S.D. Fla. Nov. 19, 2024)....................14

*Heavy Duty Lighting, LLC v. Acuity Brands Lighting, Inc.*,
No. 1:20-CV-3648-SCJ, 2021 WL 12300205 (N.D. Ga. July 19, 2021)....................18

**TABLE OF AUTHORITIES—CONTINUED**

**Pages**

*Hilliard v. Gutierrez*,
No. 21-cv-20513, 2021 WL 2712122 (S.D. Fla. July 1, 2021) ........................................16

*Horne v. Potter*,
392 F. App'x 800 (11th Cir. 2010) ........................................................................15

*In re Gosman*,
382 B.R. 826 (S.D. Fla. 2007) ..............................................................................15

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*,
361 F.3d 1355 (Fed. Cir. 2004)..............................................................................11

*Island IP Acquisitions, LLC v. Antle*,
No. 22-81293-CIV, 2023 WL 11917231 (S.D. Fla. May 19, 2023)...................................8

*James River Ins. Co. v. O'Gallagher LLC*,
340 F.R.D. 471 (S.D. Fla. 2022)...............................................................................4

*Lans v. Digital Equip. Corp.*,
252 F.3d 1320 (Fed. Cir. 2001)...............................................................................6

*Liberty Surplus Ins. Corp. v. Kaufman Lynn Constr., Inc.*,
No. 22-80203, 2022 WL 18910347 (S.D. Fla. Oct. 26, 2022) ...................................10, 20

*Maxi-Taxi of Fla., Inc. v. Lee Cnty. Port Auth.*,
301 F. App'x 881 (11th Cir. 2008) ........................................................................12

*McAndrew v. Lockheed Martin Corp.*,
206 F.3d 1031 (11th Cir. 2000) ......................................................................10, 11

*Molinos Valle Del Cibao, C. por A. v. Lama*,
633 F.3d 1330 (11th Cir. 2011) ..............................................................................19

*N.A.S. v. Morada-Haute Furniture Boutique, LLC*,
No. 20-24676-CIV, 2022 WL 5246828 (S.D. Fla. July 22, 2022) ...................................14

*N.A.S. v. Morada-Haute Furniture Boutique, LLC*,
No. 20-24676-CIV, 2022 WL 5241845 (S.D. Fla. Oct. 6, 2022) .....................................14

*NICOR, Inc. v. SourceBlue, LLC*,
No. 2:21-CV-05876-AB-PD, 2023 WL 6866329 (C.D. Cal. Aug. 30, 2023)..................13

**TABLE OF AUTHORITIES—CONTINUED**

**Pages**

*Pardazi v. Cullman Med. Ctr.*,
896 F.2d 1313 (11th Cir. 1990) ....................................7

*Portfolio Recovery Assocs., LLC v. Gonzalez*,
951 So. 2d 1037 (Fla. 3d DCA 2007) ....................................19

*Raimi v. Furlong*,
702 So. 2d 1273 (Fla. 3d DCA 1997) ....................................9

*Randall v. Scott*,
610 F.3d 701 (11th Cir. 2010) ....................................5

*Rangel v. Palms Resort & Casino*,
No. 15-22287-CIV, 2015 WL 13680367 (S.D. Fla. Aug. 14, 2015) ....................................18

*Raptor, LLC v. Odebrecht Constr., Inc.*,
No. 17-cv-21509, 2017 WL 3776914 (S.D. Fla. Aug 31, 2017) ....................................19

*Realauction.com, LLC v. Grant St. Grp., Inc.*,
82 So. 3d 1056 (Fla. 4th DCA 2011) ....................................12

*Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd.*,
No. CV 318-055, 2019 WL 2407504 (S.D. Ga. June 6, 2019) ....................................7

*Rossi v. Darden*,
No. 16-21199-CIV, 2016 WL 11501449 (S.D. Fla. July 19, 2016) ....................................11

*Rotor Blade, LLC v. Signature Util. Servs., LLC*,
545 F. Supp. 3d 1202 (N.D. Ala. 2021) ....................................11

*Shenzhen Hengzechen Tech. Co. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule A*,
No. 23-cv-23380-CIV, 2024 WL 475269 (S.D. Fla. Feb. 7, 2024) ....................................6, 17

*Stonite Prods. Co. v. Melvin Lloyd Co.*,
315 U.S. 561 (1942) ....................................7

*Streeter v. Dep't of Pub. Safety*,
689 F. Supp. 3d 1312 (S.D. Ga. 2023) ....................................7

**TABLE OF AUTHORITIES—CONTINUED**

**Pages**

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
447 F.3d 1357 (11th Cir. 2006) ....................6

*Sturmanskie LLC v. Picturemaxx Ag*,
No. 21-21091-CIV, 2022 WL 3030451 (S.D. Fla. July 5, 2022) ....................12, 13, 14

*Sturmanskie LLC v. Picturemaxx Ag*,
No. 21-21091-CIV, 2022 WL 3028072 (S.D. Fla. Aug. 1, 2022) ....................12

*Tamiami Trail Tours, Inc. v. Cotton*,
463 So. 2d 1126 (Fla. 1985)....................12

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ....................6

*Voo-Doo Daddy Prods., LLC v. Colorblind Media, LLC*,
No. 8:22-CV-1419-WFJ-AAS, 2022 WL 17251517 (M.D. Fla. Nov. 28, 2022)....................14

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016)....................17

*Weems v. Ass'n of Related Churches*,
No. 3:23-cv-811-MMH-LLL, 2024 WL 519781 (M.D. Fla. Feb. 9, 2024)....................9

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ....................5

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
609 F.3d 1308 (Fed. Cir. 2010)....................19

**STATUTES**

28 U.S.C. § 1391....................6

28 U.S.C. § 1391(b)(1) ....................6

28 U.S.C. § 1391(b)(2) ....................6

28 U.S.C. § 1391(b)(3) ....................6

28 U.S.C. § 1400(b) ....................7

**TABLE OF AUTHORITIES—CONTINUED**

**Pages**

28 U.S.C. § 1406(a) ....................................................................................................6

35 U.S.C. § 287(a) ....................................................................................................2, 5, 17

Fla. Stat. § 48.031(1)(a) ....................................................................................................19

**RULES**

Fed. R. Civ. P. 8(a)(2)....................................................................................................4, 5, 7

Fed. R. Civ. P. 10(b) ....................................................................................................4, 7

Fed. R. Civ. P. 12(b)(2).................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(3)....................................................................................................1, 2, 18

Fed. R. Civ. P. 12(b)(5)....................................................................................................1, 2, 19

Fed. R. Civ. P. 12(b)(6).................................................................................................... *passim*

Fed. R. Civ. P. 12(e) ....................................................................................................1, 4, 7

## I. INTRODUCTION

This is a patent case involving telescoping ladders, with added state-law claims related to the sales of ladders to non-party The Sherwin-Williams Company ("Sherwin"), a former customer of Plaintiff Core Distribution, Inc. ("CDI"). At base, CDI accuses Defendants The World Trade Corporation ("WTC"), Austram LLC ("Austram")[1] (collectively, "Corporate Defendants") and Alexander Joch, Frederick Joch, Christopher Joch, and Francisco Cruz (collectively, "Individual Defendants") of infringing U.S. Patent No. 10,053,912 ("'912 Patent"), based on sales of Austram-brand telescoping ladders. By allegedly communicating with and selling such ladders to Sherwin, in CDI's view, Defendants not only infringed the '912 Patent but also tortiously interfered with CDI's former relationship and acted as a civil conspiracy. CDI's claims, however, are deficient, preempted, or precluded for numerous reasons; accordingly, Defendants move to dismiss all claims of the Complaint under Federal Rules of Civil Procedure 12(b)(2), (3), (5), and (6) and 12(e).

***First***, as a threshold matter, CDI's Complaint should be dismissed under Rules 12(b)(6) and 12(e) as an improper "shotgun pleading" because it is replete with conclusory, vague, and immaterial facts and contains multiple claims against multiple Defendants without differentiating among acts committed by each Defendant. As such, CDI's Complaint lacks sufficient *facts* to give each Defendant adequate notice of the claims against them.

***Second***, each Count in the Complaint fails to state a claim under Rule 12(b)(6). As to Count I, CDI fails to allege that all required elements of a civil conspiracy are met, and further the claim is barred by the intra-corporate immunity doctrine and preempted by federal patent law. For Count

---

[1] Austram LLC was administratively dissolved in September 2022 and thus cannot have committed any acts that it is accused of at least after that date. *See* Dkt. No. 16 at 1. WTC continues to use the AUSTRAM brand name including in relation to ladders.

II, CDI likewise does not plausibly allege tortious interference by Defendants, and the claim is moreover barred by claim and issue preclusion arising from a prior suit between CDI and Individual Defendant Mr. Cruz that involved CDI's business relationship with Sherwin. Finally, Count III is deficient because CDI neglected to plead compliance with the patent marking requirements of 35 U.S.C. § 287(a) or the requisite pre-suit knowledge required for its willful infringement claim.

***Third***, Counts I – III should be dismissed against the Individual Defendants for several additional reasons. The Complaint fails to allege venue is proper for any of the Individual Defendants and thus merits dismissal of those defendants under Rule 12(b)(3). CDI does not plead that any Individual Defendant committed acts of patent infringement independent from the Corporate Defendants' sales of ladders, so Count III should be dismissed as to the Individual Defendants under Rule 12(b)(6) for this reason as well. The Complaint also does not properly allege personal jurisdiction over Mr. Cruz, whom CDI admits does not reside in Florida, and thus he should further be dismissed under Rule 12(b)(2). And CDI failed to properly serve Alexander Joch, who should thereby be dismissed under Rule 12(b)(5).

Defendants thus respectfully request dismissal of all Counts of the Complaint.

## II. FACTUAL BACKGROUND

CDI filed the Complaint on October 23, 2024, alleging patent infringement (Count III), tortious interference (Count II), and civil conspiracy (Count I) against the Corporate Defendants and the alleged owners thereof, *i.e.*, the Individual Defendants. Dkt. No. 1 (*hereinafter* "Complaint") ¶¶ 1, 30, 41-43, 50-69. All three counts purportedly involve WTC's sales of its AUSTRAM-brand ladder, including to former CDI customer Sherwin. *Id.* First, CDI accuses WTC's ladder of infringing claim 1 of the '912 Patent. *Id.* ¶¶ 1, 64-69. The '912 Patent is titled

"Extendable / Retractable Ladder" and has 10 claims, each directed to an "extendable/retractable assembly ladder" with nested telescoping stiles that can collapse together, as illustrated in Figs. 1A-1B of the patent:




FIG. 1A FIG. 1B

Dkt. No. 1-9 ('912 Patent at Claim 1, Figs. 1A-1B).

Second, CDI in turn alleges that Defendants tortiously interfered with CDI's business relationship with Sherwin, to whom it allegedly sold extendable ladders from 2011 to 2021.[2] *Id.*

---

[2] A prior Minnesota lawsuit between CDI and Individual Defendant Mr. Cruz, who was previously employed by CDI, involved the same alleged business relationship with Sherwin. (the "Minnesota Action," *i.e.*, *Core Distribution, Inc. v. Cruz*, No. 27-CV-21-8710 (Minn. 4th Jud. Dist.)). CDI accused Mr. Cruz of misappropriating funds through reimbursements, violating his fiduciary duty, and harming CDI's relationship with Sherwin, among other things. *See* Ex. 1 (*Compl.* at ¶¶ 21, 27-33, Minnesota Action (July 14, 2021)). After a trial in October 2023, around $150,000 in damages were awarded to CDI based on misappropriation, breach of fiduciary duty, and unjust enrichment. But the jury rejected CDI's claim for damages based on harm to CDI's business relationship with Sherwin—it awarded nothing on that count. *See infra* Section IV.C.ii; Dkt. 1-7 at 2 (awarding $0.00 "for lost profits").

¶¶ 16-18, 37, 57-63. But in March 2021, Sherwin allegedly cancelled all orders for CDI's ladders. *Id.* ¶¶ 19-21. In response, CDI's CEO threatened Sherwin with recourse, *see id.* ¶¶ 22; Dkt. No. 1-6, after which Sherwin's Lead Buyer Michael Young stopped responding to CDI. Complaint ¶¶ 23-24.

CDI alleges that Defendants caused Sherwin to cancel CDI's ladder orders, with the assistance of Mr. Young, and prevented CDI from doing business with Sherwin. *Id.* ¶¶ 36-37, 40. CDI does not specify how Defendants allegedly accomplished this but implies that part of the Defendants attending a "Line Review" meeting with Sherwin sometime after March 2021. *See id.* ¶¶ 33-34, 55, 60. But CDI's timeline does not add up: according to the Complaint, Sherwin had already cancelled CDI's orders and ceased responding to its communications ***before*** Defendants allegedly met with Sherwin. *See id.* ¶¶ 21, 23-24, 33.

And finally, CDI's conspiracy claim appears based on, from what Defendants can ascertain, merely predicate acts of alleged patent infringement and alleged acts relating to the tortious interference claim. *Id.* ¶¶ 50-56.

## III. LEGAL STANDARD

### A. Rule 12(b)(6) and 12(e) and Shotgun Pleadings

Under Rules 12(b)(6) and 12(e), a defendant may move to dismiss a "shotgun pleading" that violates either Rule 8(a)(2), Rule 10(b), or both due to it failing to include a "short and plain statement of the claim showing that the pleader is entitled to relief" or "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 8(a)(2), 10(b); *see James River Ins. Co. v. O'Gallagher LLC*, 340 F.R.D. 471, 473 (S.D. Fla. 2022). " 'Shotgun' pleadings include complaints that: (1) contain multiple counts where each count adopts the allegations of all preceding counts; (2) are 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'; (3) do not separate

each cause of action or claim for relief into separate counts; or (4) assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Halbig v. Lake Cnty., Fla.*, No. 23-11875, 2024 WL 470420, at *1 (11th Cir. Feb. 7, 2024) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)). Such shotgun pleadings are impermissible as they "fail[] to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

### B. Rule 12(b)(6) and *Twombly* / *Iqbal*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While complaints are generally construed in the light most favorable to a plaintiff and well-pleaded facts are accepted as true, courts "considering a motion to dismiss shall begin by identifying conclusory allegations that are ***not entitled to an assumption of truth***—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010) (emphasis added). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### C. Rule 12(b)(6) and Marking

Pursuant to 35 U.S.C. § 287(a), the patent marking statute, "a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover [pre-notice] damages." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017). Compliance with the marking statute is part of a patentee's claim, so when the patent owner fails to plead compliance with the marking statute, dismissal under Rule 12(b)(6)

of damages claims for the non-marking period is appropriate. *See, e.g.*, *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (affirming dismissal where patent owner failed to allege marking before asserted patent expired); *Shenzhen Hengzechen Tech. Co. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule A*, No. 23-cv-23380-CIV, 2024 WL 475269, at *2-3 (S.D. Fla. Feb. 7, 2024) (dismissing claim for pre-suit damages because Plaintiff failed to plead marking).

**D. Rule 12(b)(2)**

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). If a defendant challenges personal jurisdiction under Rule 12(b)(2), "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (citation omitted). Personal jurisdiction is reviewed separately for each defendant. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

**E. Rule 12(b)(3)**

Pursuant to 28 U.S.C. § 1391, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)-(3). If venue is improper, the court must dismiss or transfer the case to the proper district. 28 U.S.C. § 1406(a).

Patent claims are subject to the separate venue requirement of 28 U.S.C. § 1400(b), under which venue is proper only "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." "Unlike other types of federal actions, patent infringement cases require venue to be proper for each individual defendant." *Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd.*, No. CV 318-055, 2019 WL 2407504, at *3 (S.D. Ga. June 6, 2019) (citing *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 567 (1942)).

**F. Rule 12(b)(5)**

Service of process is a jurisdictional requirement, such that the court lacks personal jurisdiction over a defendant who has not been properly served. *Streeter v. Dep't of Pub. Safety*, 689 F. Supp. 3d 1312, 1335 (S.D. Ga. 2023) (citing *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990)). The plaintiff bears the burden of establishing *prima facie* proper service, at which point "the burden shifts to the defendant to bring strong and convincing evidence of insufficient process." *GLD, LLC v. 6 Ice, LLC*, No. 21-CV-21706-CIV, 2021 WL 4502289, at *3 (S.D. Fla. Oct. 1, 2021) (citation omitted).

## IV. ARGUMENT

### A. All Claims (Counts I-III) Should Be Dismissed Against All Defendants Because the Complaint is an Impermissible Shotgun Pleading.

CDI's Complaint should be dismissed under Rules 12(b)(6) and 12(e) for failing to adequately include a "short and plain statement of the claim showing that the pleader is entitled to relief" and to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 8(a)(2), 10(b). In view of these requirements, CDI's Complaint is a "shotgun pleading" under 11th Circuit law because it "assert[s] multiple claims against multiple defendants without specifying which claims apply to which

defendants" and is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Island IP Acquisitions, LLC v. Antle*, No. 22-81293-CIV, 2023 WL 11917231, at *3 (S.D. Fla. May 19, 2023).

The Complaint improperly asserts multiple claims against "Defendants" without specifying which claims apply to each and what acts were committed by each Defendant. The Complaint instead "indiscriminately lumps all [Defendants] together" and thus "fails to comply with Rule 8." *Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1249 (S.D. Fla. 2018) (citation omitted). For instance, according to CDI, "Defendants" are liable under Counts I-III collectively because they owed a duty to CDI, committed an overt act, intentionally and unjustifiably interfered with an advantageous business relationship, and infringed the '912 Patent. *See* Complaint ¶¶ 50-69. But this cannot be the case for all defendants – for example, CDI does not plead how Individual Defendants, Fred, Alex, and Chris Joch, who were never employed by CDI, owed any duty to CDI, or how Individual Defendant Frank Cruz, who is not an officer of WTC, infringed any CDI patent. Defendants cannot tell which alleged acts are attributed to each of them and accordingly lack "fair notice of the allegations against [them]." *Automotive Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 732 (11th Cir. 2020).

Additionally, CDI's complaint relies on conclusory and vague assertions rather than well-pleaded facts. For instance, in its conspiracy and tortious interference counts, CDI states, without supporting facts, that Defendants (1) "are parties to a civil conspiracy"; (2) "conspired to usurp [its] corporate opportunity and infringe upon the '912 Patent"; (3) "owed a duty to [it] not to infringe upon the '912 Patent"; and (4) "committed an overt act in furtherance of their conspiracy." *See* Complaint ¶¶ 50-69. The remaining allegations in the Complaint are often inconsistent and do little to clarify these conclusory statements. CDI confusingly asserts that its former employees

conspired with an employee of Sherwin to harm CDI's relationship with Sherwin but does not identify such former employees. *See id.* ¶ 36. In the following paragraph, CDI asserts that the same Sherwin employee assisted "Defendants," all of whom but Mr. Cruz are ***not*** former employees of CDI, to "cause[] the wrongful termination of purchase orders to [CDI] placed by [Sherwin]." *Id.* ¶ 37. Further, the Complaint inconsistently asserts that Austram and WTC attended and presented at Sherwin's 2021 Line Review but elsewhere states that ***all*** Defendants attended and presented. *Compare id.* ¶¶ 33-34, *with* ¶¶ 55, 60.

Such "conclusory and vague" statements are additional grounds for dismissal. *See Weems v. Ass'n of Related Churches*, No. 3:23-cv-811-MMH-LLL, 2024 WL 519781, at *4 (M.D. Fla. Feb. 9, 2024). In *Weems*, dismissal was warranted when the Complaint failed to clarify allegations such as "Defendants conspired and agreed with each other and others to engage in unlawful and tortious conduct intended to harm and injure Plaintiffs . . ." and "'Defendants acted as the principals of, directed, and controlled acts and conduct of' [another party]." *Id.* So too here.

CDI's Complaint should thus be dismissed in its entirety as a shotgun pleading because it fails to differentiate among Defendants and contains vague, conclusory, and inconsistent allegations.

**B. The Conspiracy Claim (Count I) Should Be Dismissed Against All Defendants.**

*i. CDI's Complaint Fails to State a Claim under Rule 12(b)(6) for Civil Conspiracy.*

To plead civil conspiracy, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). CDI's Complaint misses the pleading mark on multiple grounds. First, CDI fails to allege any agreement among the Defendants—let alone all of them—to take an unlawful action. CDI's allegation that

"Defendants conspired to do an unlawful act or to do a lawful act by unlawful means" is a bare legal conclusion without factual support, which must be disregarded. *See* Complaint ¶ 52; *Liberty Surplus Ins. Corp. v. Kaufman Lynn Constr., Inc.*, No. 22-80203, 2022 WL 18910347, at *4 (S.D. Fla. Oct. 26, 2022) ("This is a legal conclusion that I must disregard."). CDI also does not allege sufficient facts to make out a plausible claim against Defendants when it merely alleges that "Mr. Young [Lead Buyer for Sherwin and not a defendant] and other former employees of [CDI] . . . conspired to destroy [CDI]'s longstanding advantageous business relationship with Sherwin Williams," Complaint ¶ 36.

Second, CDI fails to adequately allege damage from Defendants' purported acts. CDI concedes that Sherwin's Lead Buyer—who is not a defendant, nor is Sherwin—ceased responding to CDI after its CEO in March 2021 threatened to recover "costs/harm due to cancellation" of orders by Sherwin. Complaint ¶¶ 22, 24; Dkt. No. 1-6. Yet the only alleged "overt act" on the part of Defendants was a presentation at Sherwin's Line Review, which as pled by CDI occurred ***after*** Sherwin ceased communicating with CDI. Complaint ¶¶ 21, 23-24, 33. CDI's allegations thus have a logical gap: CDI has not plausibly alleged *how* any or all Defendants could have caused Sherwin to cancel its orders from CDI in March 2021, much less to disinvite CDI from Sherwin's line review.

*ii. Count I Also Fails Under the Intra-Corporate Conspiracy Doctrine.*

"[T]he intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc)). "Under basic agency principles, the acts of a corporation's agents are considered to be that of a single legal actor." *McAndrew*, 206 F.3d at 1036. "[J]ust as it is not legally possible for an individual person

to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *Id.*

CDI alleges, without supporting facts, that the Individual Defendants own the Corporate Defendants and have "a unity of interest and ownership" therewith. Complaint ¶¶ 41-44. And CDI apparently bases its alleged conspiracy on Individual Defendants' acts within the scope of their business and employment for the Corporate Defendants when selling products to Sherwin. *See* Complaint ¶¶ 53-55. Such acts are not "separate and distinct from those of the corporate Defendants," so "the intra-corporate conspiracy doctrine bars Count [I] as presently pled." *Rossi v. Darden*, No. 16-21199-CIV, 2016 WL 11501449, at *9 (S.D. Fla. July 19, 2016).

*iii.* Count *I is Further Preempted by Federal Patent Law.*

CDI's civil conspiracy claim is further preempted by federal patent law. "[C]onspiracy to infringe a patent . . . has no basis in law." *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1361 (Fed. Cir. 2004). Indeed, "[f]ederal courts across jurisdictions agree that federal law preempts state law claims for patent-based civil conspiracy." *Rotor Blade, LLC v. Signature Util. Servs., LLC,* 545 F. Supp. 3d 1202, 1230 n.24 (N.D. Ala. 2021) (collecting cases). Because CDI's alleged "unlawful means" and "overt act" by Defendants rely on alleged patent infringement, *see* Complaint ¶¶ 53-55, CDI's allegations amount to a conspiracy to commit patent infringement. Such claims have been universally rejected by courts.

For these reasons, CDI's conspiracy claim (Count I) should be dismissed.

**C. CDI's Tortious Interference Claim (Count II) Should be Dismissed Against All Defendants.**

*i. CDI Fails to State a Claim for Tortious Interference Under Rule 12(b)(6).*

Under Florida law, a claim for tortious interference with advantageous business relationship requires: "(1) the existence of a business relationship, not necessarily evidenced by an

enforceable contract; (2) knowledge of the business relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Maxi-Taxi of Fla., Inc. v. Lee Cnty. Port Auth.*, 301 F. App'x 881, 885 (11th Cir. 2008) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)). "[A]n action for tortious interference with a business relationship [moreover] requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Sturmanskie LLC v. Picturemaxx Ag*, No. 21-21091-CIV, 2022 WL 3030451, at *13 (S.D. Fla. July 5, 2022), *report and rec. adopted*, 2022 WL 3028072 (S.D. Fla. Aug. 1, 2022).

CDI repeatedly invokes the legal elements of tortious interference but fails to plead facts to show they are plausibly satisfied. First, CDI does not allege the *existence* of a business relationship with Sherwin after March 2021 or knowledge of such relationship by Defendants *at the time of their supposed interference*. *See* Complaint ¶ 59. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "The law is clear that to sustain a tortious interference claim, there must be a relationship in existence at the time of any alleged interference." *Realauction.com, LLC v. Grant St. Grp., Inc.*, 82 So. 3d 1056, 1060 (Fla. 4th DCA 2011) (citation omitted). Conclusory allegations regarding such relationship should be discounted.

According to CDI, Sherwin cancelled all ladder orders in March 2021 and stopped responding to CDI's communications after receiving CDI's CEO's threats of recourse for the canceled orders. Complaint ¶¶ 20-22, 24; Dkt. No. 1-6. CDI does not allege that its business relationship continued after this point, nor that Defendants were aware of any such relationship.

*Id.* Instead, by March 2021, the "Complaint demonstrates that [CDI]'s and [Sherwin]'s business relationship had deteriorated to such a point that [CDI] cannot plausibly allege that [its sales to Sherwin] would have been completed if Defendants had not interfered." *Sturmanskie LLC*, 2022 WL 3030451, at *13; *see* Complaint ¶¶ 22, 24, 40; Dkt. No. 1-6. This dooms Count II because CDI does not allege that Defendants committed the alleged interference on or before March 2021 when it says its sales with Sherwin ceased. The Complaint is silent about how or when Defendants purportedly contacted Sherwin, prevented CDI from attending Sherwin's 2021 Line Review, compelled Sherwin to cancel orders, or began selling ladders to Sherwin. Complaint ¶¶ 37, 60. And CDI's attempt to rely on Defendants' alleged 2021 Line Review presentation to Sherwin as "interference" is inadequate because this presentation occurred ***after*** CDI's business relationship ended in March 2021. *See* Complaint ¶¶ 33-34, 60.

Second, CDI does not plead "unjustified interference" with a business relationship. Contacting Sherwin and pitching for business is not unlawful or unjustified conduct. CDI fails to allege how Defendants' alleged Line Review presentation to Sherwin could have caused the earlier "wrongful termination" of Sherwin's purchase orders from CDI in March 2021, as discussed above. Complaint ¶¶ 21-22, 37. And to the extent that the claim is premised on patent infringement, *see* Complaint ¶ 60, it is again preempted by federal law. *See NICOR, Inc. v. SourceBlue, LLC*, No. 2:21-CV-05876-AB-PD, 2023 WL 6866329, at *16 (C.D. Cal. Aug. 30, 2023) (concluding that federal patent law preempted a tortious interference claim based on allegations of "patient infringement to create a copycat product to win [customer] contracts").

Finally, CDI does not adequately allege harm from Defendants' purported acts. As discussed, CDI's only alleged harm is the loss of Sherwin orders that occurred as late as March 2021. "Under Florida law, a plaintiff bringing a tortious interference claim must show actual harm

to a business relationship, as opposed to merely a suspicion or unsupported and speculative supposition of harm." *Voo-Doo Daddy Prods., LLC v. Colorblind Media, LLC*, No. 8:22-CV-1419-WFJ-AAS, 2022 WL 17251517, at *4 (M.D. Fla. Nov. 28, 2022) (citation omitted). CDI fails to allege any specific acts by Defendants on or preceding March 2021 that would cause Sherwin to cancel such orders. Its alleged harm is therefore implausible and speculative. *See Sturmanskie*, 2022 WL 3030451, at *13.

*ii. Issue Preclusion Bars CDI From Recovering Damages Related to its Lost Business Relationship With Sherwin (Count II).*

Because CDI earlier litigated the identical issue around the cessation (or loss) of its alleged business relationship with Sherwin in Minnesota against Individual Defendant Mr. Cruz, ***and lost before a jury***, CDI is barred by issue preclusion (collateral estoppel) from recovering damages due to the alleged loss of its alleged business relationship with Sherwin. Issue preclusion applies when "(1) the issue at stake [is] identical to the one involved in the prior litigation; (2) the issue [was] actually litigated in the prior suit; (3) the determination of the issue in the prior litigation [was] a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted ... had a full and fair opportunity to litigate the issue in the earlier proceeding." *Harding v. Transunion LLC*, No. 23-23775-CIV, 2024 WL 4826448, at *6 (S.D. Fla. Nov. 19, 2024) (quoting *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003)). Because the Minnesota Action jury denied CDI any damages based on its alleged lost relationship with Sherwin—the identical relationship discussed in the instant complaint—CDI is estopped from alleging damages based on tortious interference (Count II) with that relationship. Simply put, CDI cannot have a "second bite of the apple." *N.A.S. v. Morada-Haute Furniture Boutique LLC*, No. 20-24676-CIV, 2022 WL 5246828, at *4 (S.D. Fla. July 22, 2022), *report and rec. adopted*, 2022 WL 5241845 (S.D. Fla. Oct. 6, 2022).

Application of issue preclusion is proper here at the 12(b)(6) stage because "the existence of collateral estoppel can be judged from the face of the complaint," which explicitly references the Minnesota Action. *See* Complaint ¶¶ 27-28 & n.2, 32; Dkt. Nos. 1-7, 1-8; *In re Gosman*, 382 B.R. 826, 839 (S.D. Fla. 2007). The Court may properly take judicial notice of public records from the Minnesota Action to support its analysis. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). First, the issue litigated in the Minnesota Action is identical to that in Count II—CDI argued there, as here, that it suffered damages from losing its business relationship with Sherwin. *Compare* Complaint ¶¶ 25-30, *with* Ex. 2 at 5 (*CDI's Mot. in Limine*, Minnesota Action (Mar. 2, 2023)) (CDI alleging that Mr. Cruz made "unauthorized and destructive" decisions which "subverted the business relationship . . . with Sherwin-Williams and . . . led to Cruz's solicitation of Sherwin-Williams on behalf of Joch-owned entities [*i.e.*, Austram and WTC]."). Trial exhibits in the Minnesota Action describe CDI's allegations that Defendant Mr. Cruz harmed its relationship with Sherwin, "ultimately costing [CDI] a continuing business relationship with its largest customer." Ex. 3 at 6 (*Def.'s Resp. to Pl.'s Objs. to Def.'s Trial Exs.* at 6, Minnesota Action (Oct. 2, 2023)); *see* Ex. 4 at 5 (*Joint Statement of the Case*, Minnesota Action (Feb. 9, 2023)) (alleging how CDI sought almost $3 million in lost profits from Mr. Cruz based on its loss of business with Sherwin and other customers). Evidence in the Minnesota Action was likewise identical—Michael Young and Defendants A. Joch, F. Joch, and Mr. Cruz were identified as witnesses, and WTC's 2021 Line Review presentation discussed at length in the instant Complaint was on the Minnesota Action's exhibit lists. Ex. 4 at 6; Ex. 5 at 10 (*Pl.'s Fourth Trial Ex. List*, , Minnesota Action (Oct. 5, 2023)) (including the "*June 2021 TWTC Sherwin Williams Powerpoint Presentation*"). Thus, the issue of damage related to CDI's lost relationship with Sherwin was identical to the issue of damage alleged in the tortious interference claim (Count II).

The issue of lost business relationship and damages related thereto was also actually litigated and a "critical and necessary" part of the judgment in the Minnesota Action. Dkt. No. 1-7. ("The sum of $0.00 will fairly and adequately compensate Plaintiff Core Distribution, Inc. for *lost profits*."). CDI had a full and fair opportunity to litigate the loss of its business relationship with Sherwin in the Minnesota Action, and the jury found its argument meritless—awarding zero damages. *Id.*

Therefore, CDI is precluded from arguing it is entitled to damages related to its business relationship with Sherwin, and Count II should be dismissed for this reason as well.

*iii. Claim Preclusion Bars CDI's Tortious Interference Count II Against All Defendants.*

Count II against all Defendants are moreover precluded by the Minnesota Action. "A subsequent suit is barred under the doctrine of claim preclusion when the following four elements are present: (1) there is a final judgment on the merits, (2) the decision was rendered by a court of competent jurisdiction; (3) the same cause of action is involved in both cases; and (4) the parties, or those in privity with them, are identical in both suits." *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014). "If a case arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action, the two cases are really the same 'claim' or 'cause of action' for purposes of *res judicata*." *Id.* at 1247 (cleaned up). Stated differently, claim preclusion applies to all legal theories and claims arising out of the same nucleus of operative fact that *could have* been raised in the prior action. *Id.*

There is identicality among parties: Mr. Cruz and CDI were both parties in the Minnesota Action. The "cause of action" is likewise identical because Count II arises out of the same nucleus of operative facts as the Minnesota Action—whether CDI suffered damages from Mr. Cruz's actions around when he left CDI. *See supra* Section IV.C.ii. Claim preclusion additionally attaches to all other Defendants for the same reason. *See Hilliard v. Gutierrez*, No. 21-cv-20513, 2021 WL

2712122, at *6 n.8 (S.D. Fla. July 1, 2021). "[CDI] cannot avoid the preclusive effects of the *res judicata* doctrine simply by naming additional defendants in the new action." *Id.* The Minnesota court had competent jurisdiction and entered a final judgment. Dkt. No. 1-8. Thus, claim preclusion bars CDI from asserting Count II against Defendants.

**D. Pre-Suit Damages for The Patent Infringement Claim (Count III) Should be Dismissed Because CDI Failed to Plead Compliance with the Marking Statute.**

A patentee fails to state a claim for damages for patent infringement unless it pleads compliance with 35 U.S.C. § 287(a) by marking its patented articles or providing notice of infringement. *Arctic Cat*, 876 F.3d at 1366. CDI is required to mark its products—undisputedly covered by the '912 Patent—under 35 U.S.C. § 287(a) because its claims are directed to apparatuses. *See Shenzhen*, 2024 WL 475269, at *2; *see also* Complaint ¶¶ 33-34, 60 (referring to CDI's "patented [. . .] products"). But CDI neglects to plead compliance with the marking statute, so pre-suit damages for its patent claim (Count III) should be dismissed. *See Express Mobile, Inc. v. DreamHost LLC*, No. 1:18-cv-01173-RGA, 2019 WL 2514418, *2 (D. Del. June 18, 2019) (dismissing complaint for failure to allege marking). And CDI further failed to adequately allege that it provided notice to Defendants because it does not allege when each Defendant became aware of the '912 Patent with specificity.[3]

**E. CDI Fails to Allege Facts Showing Willful Infringement Against Any Defendant.**

CDI's willful infringement claim likewise fails because it neglected to plead pre-suit knowledge of the patent, a requirement to show willfulness. *See WBIP, LLC v. Kohler Co.*, 829

---

[3] CDI alleges that it sent a letter regarding the '912 Patent to "Defendants" in early April 2024. But the face of the letter lists only WTC, Alexander Joch, and Frederic Joch as recipients, and it is ambiguous to where the letter was actually mailed. *See* Dkt. No. 1-11. Even setting such deficiencies aside, CDI fails to allege that all Defendants became aware of the '912 Patent prior to early April 2024, so CDI cannot maintain claims for patent damages or willful infringement before that date.

F.3d 1317, 1341 (Fed. Cir. 2016); *see also supra* Section IV.D. Nor does CDI allege that each Defendant intentionally infringed the Asserted Patent. CDI's willful infringement allegations are thus deficient and should be dismissed. *See Heavy Duty Lighting, LLC v. Acuity Brands Lighting, Inc.*, No. 1:20-CV-3648-SCJ, 2021 WL 12300205, at *3 (N.D. Ga. July 19, 2021).

**F. The Court Should Dismiss All Claims Against the Individual Defendants Under Rules 12(b)(2), (3), (5), and (6).**

Despite this action being one centered on alleged patent infringement, CDI needlessly and improperly sued Alexander Joch, Frederick Joch, Christopher Joch, and Francisco Cruz in their individual capacities. All claims against them should be dismissed.

*i. The Complaint Fails to Plead Venue as to the Individual Defendants.*

"[CDI] has the burden of establishing a prima facie case of proper venue." *Rangel v. Palms Resort & Casino*, No. 15-22287-CIV, 2015 WL 13680367, at *2 (S.D. Fla. Aug. 14, 2015) (citation omitted). But CDI neglected this burden, in that the only venue allegations in the Complaint relate to the Corporate Defendants. *See* Complaint ¶ 12. The Complaint is devoid of any venue allegations for the Individual Defendants. All claims against the Individual Defendants should accordingly be dismissed under Rule 12(b)(3).

*ii. The Complaint Alleges No Infringing Acts by the Individual Defendants*

CDI alleges that "Defendants have infringed and continue to infringe the '912 Patent," which includes both the Corporate Defendants and the Individual Defendants. But CDI alleges the Individual Defendants made sales "*through* Austram and WTC," and that *only* "Austram and WTC" or unspecified "Defendants" presented CDI's patented products at the 2021 Line Review.

Instead of alleging facts that any Individual Defendant infringed the patent, CDI instead makes conclusory assertions that the Individual Defendants and Corporate Defendants are the "alter egos of each other," "a single enterprise," or are "agents" of one another. Complaint, ¶¶ 41-

44. However, the "corporate veil" shields a company's officers or owners from personal liability for direct infringement committed in the name of the corporation. *See Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010). Thus, CDI implicitly asks to pierce the corporate veil but has not alleged facts requisite for this determination. *See, e.g., Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (explaining that piercing the corporate veil requires finding that "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant."); *see also Raptor, LLC v. Odebrecht Constr., Inc.*, No. 17-cv-21509, 2017 WL 3776914, at *5 (S.D. Fla. Aug 31, 2017).

*iii. Defendant Alexander Joch Was Not Properly Served with the Complaint.*

Defendant Alexander Joch received "insufficient service of process" under Fla. Stat. § 48.031(1)(a), so all claims against him should moreover be dismissed under Rule 12(b)(5) (or Rule 12(b)(2) for lack of personal jurisdiction). Substituted service of process was attempted on Alexander Joch on November 1, 2024 by delivering the complaint and summons to Dinara Nefedova at 791 Crandon Blvd, Key Biscayne, FL 33149. *See* Dkt. 10. However, 791 Crandon Blvd is not Alexander Joch's "usual place of abode." Leaving a copy of the summons and complaint at a location that is not the defendant's "usual place of abode," even with a resident of that location, is insufficient service of process. *See Portfolio Recovery Assocs., LLC v. Gonzalez*, 951 So. 2d 1037, 1038 (Fla. 3d DCA 2007). Whether the defendant received the complaint and summons is irrelevant. *Id.* Therefore, all claims against Alexander Joch should be dismissed under Rule 12(b)(5).

*iv. The Complaint Fails to Allege Personal Jurisdiction Over Defendant Francisco Cruz.*

Personal jurisdiction is not properly alleged over Defendant Mr. Cruz because he is domiciled in Minnesota, not Florida, as CDI now correctly acknowledges. *Compare* Dkt. 25 at 2 (CDI's Certificate of Interested Persons and Corporate Disclosure Statement), *with* Complaint ¶ 8. The Complaint's erroneous allegations to the contrary are legal conclusions without basis in fact and must be rejected. *See Liberty Surplus*, 2022 WL 18910347, at *4; Complaint ¶¶ 8, 11. Accordingly, personal jurisdiction over Mr. Cruz has not been sufficiently pled and any counts against him should be dismissed under Rule 12(b)(2).

## V. CONCLUSION

For the reasons discussed above, all claims should be dismissed.

Dated: January 13, 2025

Respectfully submitted,

/s/ Mark Cheskin
Mark Cheskin
Fla. Bar No. 708402
Hogan Lovells US LLP
600 Brickell Ave, Ste 2700
Miami, FL 33131
mark.cheskin@hoganlovells.com

Celine J. Crowson
(*pro hac vice*)
Hogan Lovells US LLP
555 13th St. NW
Washington, D.C. 20004
celine.crowson@hoganlovell.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on January 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Mark Cheskin*