UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-24110-ALTMAN

CORE DISTRIBUTION,

    *Plaintiff*,

*v.*

THE WORLD TRADE CORPORATION, *et al.*,

    *Defendants.*

_____/

## ORDER

The Defendants have filed a Motion to Dismiss the Plaintiff's Complaint (the "MTD") [ECF No. 27]. Having carefully reviewed the briefing, the record, and the governing law, we **GRANT** the motion.

## THE FACTS[1]

"For decades," our Plaintiff, Core Distribution, "has specialized in developing extendable ladders." Complaint ("Compl.") [ECF No. 1]. ¶ 13. "Since on or about 2011 through 2021, Core had a contractual relationship with Sherwin Williams pursuant to which Core acted as a vendor selling and providing Core's extendable ladders to Sherwin Williams." *Id.* ¶ 16. "During that timeframe, Core shipped over 217,000 products to Sherwin Williams at a wholesale value of over $31,000,000.00." *Id.* ¶ 17. "On November 30, 2020, January 19, 2021, and February 16, 2021, Sherwin Williams placed orders for 14,955 Units, totaling $3,585,217.50." *Id.* ¶ 18. "On or about March 3, 2021, a representative

---

[1] We accept the allegations of the Complaint [ECF No. 1] as true for purposes of this Order. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but 'legal conclusions without adequate factual support are entitled to no assumption of truth.'" (quoting *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (cleaned up))).

of Sherwin Williams emailed Core Distribution seeking to cancel certain orders, though ultimately confirming the orders should be left as originally scheduled." *Id.* ¶ 19. "On or about March 12, 2021," Sherwin Williams again "cancelled purchase orders for 4,620 Products, totaling $966,380.00." *Id.* ¶ 20. "On or about March 16, 2021, Sherwin Williams cancelled the remaining purchase orders." *Id.* ¶ 21.

Around the time that Sherwin Willaims canceled these purchase orders, Sherwin Williams' Lead Buyer, Michael Young, "formally invited Core to the annual Line Review held by Sherwin Williams for presentations of products, as Core had been previously invited for over 10 years." *Id.* ¶ 23. Core accepted the invitation, but its "2021 Line Review meeting was never confirmed by Mr. Young, who ceased responding to Core[.]" *Id.* ¶ 24.

But that was just the beginning of our Plaintiff's troubles. Francisco Cruz was the Plaintiff's "long-time employee and Chief Operating Officer[.]" *Id.* ¶ 25. "On July 9, 2021, after discovering theft of monies by Cruz, Core was forced to file a lawsuit against Cruz in the Fourth Judicial District in the State of Minnesota[.]" *Id.* ¶ 27; *see also Core Dist., Inc. v. Cruz*, 27-cv-21-8710 (Minn. Dist. Ct. 2021) (the "Minnesota Action").[2] The Minnesota Action alleged ten claims against Cruz: Breach of Fiduciary Duty (Count I); Misappropriation, Waste, and Misue of Assets (Count II); Conversion (Count III); Unjust Enrichment (Count IV); Civil Liability for Theft under MINN. STAT. § 604.14 (Count V); Civil Liability for Theft under MINN. STAT. § 609.53 (Count VI); Replevin (Count VII); Accounting (Count

---

[2] The Plaintiff cites case number "No.: 27-CV-27-8710." Compl. ¶ 27. A search of the Minnesota Court Records Online, *see* Minnesota Judicial Branch, Minnesota Court Records Online, https://publicaccess.courts.state.mn.us/, shows that this case number doesn't exist. After conducting *our own* search, we realized that the *correct* case number is 27-cv-21-8710. We'll take judicial notice of the relevant state-court records for *that* case under Federal Rule of Civil Procedure 201 because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (quoting FED. R. EVID. 201(b)); *see also Cave v. Stone*, 2021 WL 4427451, at *1 (S.D. Fla. Sept. 27, 2021) (Altman, J.) ("Federal Rule of Evidence 201 permits a federal court to take judicial notice of state-court records because, generally, those records 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting FED. R. EVID. 201(b))).

VIII); Constructive Trust (Count IX); and Injunctive Relief (Count X). *See* Minnesota Action, Complaint [DE 1]. On October 16, 2023, "a jury rendered a verdict that Cruz breached his fiduciary duties to Core [ ] as an employee and officer and that Cruz was unjustly enriched as a result, owing [Core] total damages in the amount of $133,231.13." Compl. ¶ 27 n.2.

Here's where our case comes in. According to the Complaint, "since 2017 [Cruz] was already misdirecting Core's corporate opportunities to [the World Trade Corporation ('WTC')] and Austram, among several others." *Id.* ¶ 29. And, "[i]mmediately following his termination, Cruz began working with WTC and Austram, where he is a partial owner." *Id.* ¶ 30. Our Plaintiff alleges that, during the Minnesota Action, it learned that Austram and WTC "entered into a contractual relationship with Sherwin Williams to supply ladders that infringe Core's patents and trademarks." *Id.* ¶ 32; *see also id.* ¶ 31 ("Core subsequently learned that [Francisco] Cruz, [Alexander] Joch, [Christopher] Joch, and [Frederick] Joch, through Austram and WTC, were selling ladders to Sherwin Williams under the brand name Austram and that these Austram ladders are covered by Core's '912 Patent."). "In fact, Austram and WTC were allowed to, and did, present Core's patented and trademarked products to Mr. Young of Sherwin Williams at the 2021 Line Review after Core was disinvited to the same." *Id.* ¶ 33.

On April 8, 2024, counsel for the Plaintiff sent a letter to Alexander and Frederick Joch, alleging that WTC "is selling a ladder, the Austram Telescoping Ladder, that infringes Core Distribution's '912 Patent." Infringement Letter [ECF No. 1-11] at 1. The Infringement Letter addressed Alexander Joch as the "President" of WTC and included both Alexander's and Fred Joch's WTC emails. *Ibid.*

On October 23, 2024, our Plaintiff filed this case against four individuals—Francisco Cruz, Alexander Joch, Christopher Joch, and Frederick Joch (the "Individual Defendants")—and two corporations, Austram and WTC (the "Corporate Defendants"). *See generally* Complaint. The

Complaint advances three counts: Civil Conspiracy (Count I), *see id.* ¶¶ 50–56; Tortious Interference with an Advantageous Business Relationship (Count II), *see id.* ¶¶ 57–63; and Patent Infringement (Count III), *see id.* ¶¶ 64–69. Our Defendants have responded with a Motion to Dismiss, asking us to dismiss all counts against the Individual Defendants and Counts I and II against the Corporate Defendants. *See generally* MTD.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## ANALYSIS

The Defendants attack the Complaint on seven grounds: *First*, they say that we lack personal jurisdiction over Defendant Cruz. *Second*, they argue that our District isn't the proper venue for the case against the Individual Defendants. *Third*, they contend that Alexander Joch was improperly

served. *Fourth*, they ask us to dismiss Count II because it fails to state a claim and because it's barred by the doctrines of issue *and* claim preclusion. *Fifth*, they assert that the Complaint fails to plausibly state a claim for conspiracy under Count I. *Sixth*, they maintain that the Plaintiff failed to comply with the patent marking statute. And *seventh*, they argue that the Plaintiffs haven't sufficiently pled patent infringement against the Individual Defendants.

## I. We Have Personal Jurisdiction Over Cruz

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "General jurisdiction, as its name implies, extends to any and all claims brought against a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotations omitted). The Defendants argue that "[p]ersonal jurisdiction is not properly alleged over Defendant Mr. Cruz because he is domiciled in Minnesota, not Florida, as CDI now correctly acknowledges." MTD at 28.[3] But the Complaint alleges that the "Defendant, Cruz, resides in the Southern District of Florida." Compl. ¶ 8. And "we may presume that, until controverted by fact, he is domiciled at his current residence[.]" *Molinos Valle Del Cibao, C.*

---

[3] Admittedly, the Plaintiff later filed a Certificate of Interested Persons ("CIPs") [ECF No. 17], in which it suggested that "Francisco Cruz" is a "citizen of the state of Minnesota[.]" CIPs at 2. Unfortunately for Cruz, the Plaintiff never amended its Complaint to allege that Cruz is a citizen of Minnesota—and we must treat the Complaint's well-pled allegations as true. A plaintiff, after all, cannot amend its complaint via a notice on the docket. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint."); *see also Norrell v. Phenix City Pub. Transp. (PEX)*, 2024 WL 4759771, at *3 (M.D. Ala. Nov. 12, 2024) (Adams, J.) ("A notice is not a proper mechanism for amending a complaint. Instead, a complaint is amended in accordance with Rule 15(a) of the Federal Rules of Civil Procedure[.]").

Tellingly, the Defendants cite no authority for the proposition that the CIPs should control our analysis. *See generally* MTD. "The law is well-settled that '[p]erfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.'" *Michaels v. Sasser's Glass Works Inc.*, 662 F. Supp. 3d 1223, 1243 (S.D. Fla. 2023) (Altman, J.), *aff'd*, 2025 WL 588648 (11th Cir. Feb. 24, 2025) (quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009)); *see also* S.D. FLA. L.R. 7.1(a)(1) ("Every motion when filed and served shall incorporate a memorandum of law citing supporting authorities[.]"). So, we'll accept the allegations of the Complaint for now and treat Cruz as a resident of Florida.

*por A. v. Lama*, 633 F.3d 1330, 1342 (11th Cir. 2011) (citing *Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F.2d 954, 956 (5th Cir. 1966) (describing a "presumption of domicile in the jurisdiction where the party is a resident at the crucial time")). The burden therefore shifts to the Defendants to "challenge[ ] jurisdiction by submitting affidavit evidence in support of its position[.]" *Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 848 (11th Cir. 2020). But the Defendants failed to present *any* evidence (affidavits or otherwise) of Cruz's domicile in Minnesota. Their unsupported assertions in the Motion to Dismiss aren't evidence of anything—and they're woefully insufficient to meet their burden of production here. *See Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1504 (11th Cir. 1984) ("If the defendant raises a question of personal jurisdiction and the district court elects to decide the question solely on the basis of the pleadings and affidavits, it must accept as true those allegations of the complaint which are not controverted by defendant's evidence and deny the motion to dismiss if the plaintiff presents a prima facie case of jurisdiction[.]"). Because the Plaintiff alleges that Cruz resides in Florida—and since the Defendants present no evidence to the contrary—we have general personal jurisdiction over Cruz here (at least for now).[4]

## II.     Venue is Proper for the Individual Defendants

The Defendants next ask us to dismiss the Complaint against the Individual Defendants because "the only venue allegations in the Complaint relate to the Corporate Defendants." MTD at 26. "All claims against the Individual Defendants," it argues, "should accordingly be dismissed under Rule 12(b)(3)." *Ibid.* We disagree.

"Whether venue is proper under [28 U.S.C.] § 1400(b) is an issue unique to patent law and is governed by Federal Circuit law." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018). "The

---

[4] Of course, if the Certificate of Interested Persons is an indication that the Plaintiff knows Cruz *doesn't* reside in Florida, then we think it incumbent on the Plaintiff to rectify this misunderstanding immediately. And, it goes without saying, in that case, we *wouldn't* have general personal jurisdiction over Cruz in Florida.

plaintiff has the burden of establishing proper venue under that provision." *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1119 (Fed. Cir. 2021). Section § 1400(b) provides that:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

§ 1400(b). In other words, "[t]o establish venue, a plaintiff may show either that the defendant 'resides' in a particular district or that it 'has committed acts of infringement and has a regular and established place of business' there." *Celgene*, 17 F.4th at 1119 (quoting § 1400(b)).

Our Plaintiff alleges that the Individual Defendants all "reside[ ] in the Southern District of Florida." Compl. ¶¶ 5–8; *see also Minn. Min. & Mfg. Co. v. Eco Chem., Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985) ("The patent venue statute makes no distinction between individuals and corporations[.]"). And, again, the Individual Defendants failed to submit any *evidence* challenging this allegation. *See generally* Docket. That's really the end of that. *See Est. of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012) (considering a motion under 12(b)(3) and noting that, although "we take the facts of the complaint as true, we do so only to the extent they are uncontroverted by defendant's affidavits" (cleaned up)).[5] We therefore conclude that venue is proper in the Southern District of Florida.[6]

---

[5] Despite challenging our personal jurisdiction over Defendant Cruz based on his domicile, *see* MTD at 28, the Defendants fail to raise this argument as to *venue* and have thus forfeited the argument for now, *see United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court sua sponte [only] in extraordinary circumstances."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived.").

[6] A final note on venue. In its Response, the Plaintiff relies on § 3591. *See* Resp. at 12 ("[V]enue is proper in the Southern District of Florida under the provisions of 28 U.S.C. §§ 1391(b) and (c) and 1400(b)[.]"). But that's not quite right. "The Supreme Court in *TC Heartland* reaffirmed that § 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions." *Celgene*, 17 F.4th at 1120 (citing *TC Heartland v. Kraft Foods Grp. Brands, LLC*, 581 U.S. 258, 270 (2017)); *see also In re Micron Tech., Inc.*, 875 F.3d 1091, 1099 (Fed. Cir. 2017) (observing that *TC Heartland* "sever[ed]

### III.     Defendant Alexander Joch was Properly Served

Next, the Defendants argue that Defendant Alexander "Joch received 'insufficient service of process' under FLA. STAT. § 48.031(1)(a), so all claims against him should moreover be dismissed under Rule 12(b)(5)[.]" MTD at 27. In support of this contention, the Defendants say the following:

> Substituted service of process was attempted on Alexander Joch on November 1, 2024 by delivering the complaint and summons to Dinara Nefedova at 791 Crandon Blvd, Key Biscayne, FL 33149. However, 791 Crandon Blvd is not Alexander Joch's "usual place of abode." Leaving a copy of the summons and complaint at a location that is not the defendant's "usual place of abode," even with a resident of that location, is insufficient service of process.

*Ibid.* (quoting Joch Return of Service [ECF No. 10]). The Plaintiff disagrees, insisting that "Joch has publicly represented his place of residence at the address of 791 Crandon Blvd, Key Biscayne, FL 33149." Resp. at 13. Again, the Defendants adduce no evidence for their position.

Under Rule 12(b)(5), a defendant may move to dismiss a complaint because of "insufficient service of process." FED. R. CIV. P. 12(b)(5). "While a plaintiff bears the ultimate burden of proving valid service of process, a return of service that is regular on its face is presumed to be valid absent clear and convincing evidence presented to the contrary." *Robles-Martinez v. Diaz, Reus & Targ, LLP*, 88 So. 3d 177, 179 (Fla. 3d DCA 2011)). "'Regular on its face' means the return of service attests to all the information required by the service statute." *Ibid.* "This information includes a defendant's usual place of abode." *Ibid.*; *see also S.E.C. v. Internet Sols. for Bus., Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) ("A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." (citations omitted)).

_____

§ 1400(b) from § 1391(c)"). So, if the amended complaint asserts that any of the Individual Defendants reside outside our District, the Plaintiff must establish that each Individual Defendant *himself* "has committed acts of infringement and has a regular and established place of business" in our District. § 1400(b).

The Joch Return of Service appears to include all the information Florida law requires. Here's what Florida's service-of-process statute has to say: "Service of original process is made by delivering a copy of it to the person to be served with a copy of the complaint, petition, or other initial pleading or paper or by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents." FLA. STAT. § 48.031(1)(a). And our Plaintiff filed a return of service that states precisely that:

> [The process server] substitute served by delivering a true copy of the Summons, Complaint and Exhibits; Order in Cases with Multiple Defendants with the date and hour of service endorsed thereon by me, to: Dinara Nefedova as Co-Resident at the address of: 791 Crandon Blvd, Key Biscayne, FL 33149, the within named person's **usual place of Abode**, who resides therein, who is fifteen (15) years of age or older and informed said person of the contents therein, in compliance with state statutes.

Joch Return of Service at 1 (emphasis altered); *see also Friedman v. Schiano*, 777 F. App'x 324, 330 (11th Cir. 2019) ("The returns in this case were regular on their face: they named Schiano (in his individual capacity or as a registered agent); they stated the documents that were delivered; they identified Skripova as a co-resident 15 years of age or older to whom the documents were delivered; and they listed 3840 as Schiano's usual place of abode. The burden thus shifted to Schiano to invalidate the returns via clear and convincing evidence.").

Because the Joch Return of Service includes every element Florida law requires, *see* FLA. STAT. § 48.031, the burden shifts to the Defendants to prove that the returns are invalid by clear and convincing evidence. *See Friedman*, 777 F. App'x at 328 ("Because the verified returns of service were valid on their face . . . [the Defendant] bore the burden under Florida law of proving by clear and convincing evidence that [the address on the return of service] was not his usual place of abode at the time of service."). They haven't met that burden. Instead, they allege only that "791 Crandon Blvd is not Alexander Joch's 'usual place of abode.'" MTD at 27. But they (again) present *no* evidence for this proposition—no affidavits, no declarations, no mail addressed to Joch at a different place. Florida courts have been clear that "a defendant may not impeach the validity of the summons with a simple

9

denial of service, but must present 'clear and convincing evidence' to corroborate his denial." *Telf Corp. v. Gomez*, 671 So. 2d 818, 819 (Fla. 3d DCA 1996). The Defendants' conclusory and "simple denial of service" is thus insufficient to support their 12(b)(5) contentions. *See Carter v. Verizon Wireless*, 2015 WL 13310395, at *1 (M.D. Fla. Oct. 14, 2015) (Kovachevich, J.) ("[D]ue to the fact that the Defendant has only made conclusory allegations in support of its argument that the Plaintiff's service of the Complaint was ineffective, the Motion does not provide an adequate record from which to support dismissal of the Complaint under Federal Rule 12(b)(5).").

## IV.      Count II: Tortious Interference with a Business Relationship

Count II alleges that the "Defendants intentionally and unjustifiably interfered with Core's advantageous business relationship with Sherwin Williams by contacting Mr. Young, preventing Core from attending 2021 Line Review, taking Core's place at the 2021 Line Review and presenting Core's patented products, and replacing Core as a vendor for the same products." Compl. ¶ 60. "As a direct result of [the] Defendants' intentional and unjustified interference with this advantageous business relationship," the Plaintiff says, "the purchase orders were canceled and this advantageous business relationship between Core and Sherwin Williams has been lost." *Id.* ¶ 61. The Defendants advance two arguments for dismissal. *First*, they say that Count II is barred by the doctrines of claim and issue preclusion because "the issue litigated in the Minnesota Action is identical to that in Count II—[the Plaintiff] argued there, as here, that it suffered damages from losing its business relationship with Sherwin." MTD at 23. *Second*, they argue that Count II fails to state a claim because the Plaintiff "repeatedly invokes the legal elements of tortious inference but fails to plead facts to show they are plausibly satisfied." *Id.* at 20. We agree that Count II fails to state a claim—though we disagree that it is precluded.

### a.   Issue and Claim Preclusion

In support of their preclusion arguments, the Defendants claim that "the issue litigated in the Minnesota Action is identical to that in Count II—[the Plaintiff] argued there, as here, that it suffered damages from losing its business relationship with Sherwin." *Id.* at 23. Putting aside Defendant Cruz for a moment, we can easily dispose of this argument because the Defendants advance their preclusion arguments against *all* the Defendants, even though the Minnesota Action was solely against Defendant Cruz. *See id.* at 3 n.1 ("A prior Minnesota lawsuit between CDI and Individual Defendant Mr. Cruz[.]"); *id.* at 22 ("[The Plaintiff] is barred by issue preclusion (collateral estoppel) from recovering damages due to the alleged loss of its alleged business relationship with Sherwin."); *id.* at 23 ("Thus, claim preclusion bars [the Plaintiff] from asserting Count II against [the] Defendants.").

"It is axiomatic that preclusion doctrines such as res judicata and collateral estoppel require that the judgment or issues sought to be re-litigated are asserted against the same party or his privy." *In re Air Crash near Rio Grande Puerto Rico on Dec. 3, 2008*, 2016 WL 6916601, at *1 (S.D. Fla. Nov. 3, 2016) (Marra, J.); *see also Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process[.]" (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940))). And the Defendants don't even try to establish that the Defendants are Cruz's "privy." *See generally* MTD at 22–25. They've therefore forfeited any such argument. *See Campbell*, 26 F.4th at 873 ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court sua sponte [only] in extraordinary circumstances."); *Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed waived.").

As to Defendant Cruz, claim preclusion (*res judicata*) requires a showing that both suits involve "the same cause of action," *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014), and issue preclusion (collateral estoppel) demands proof that "the issue at stake is identical to the one involved

in the prior proceeding," *Christo v. Padgett*, 223 F. 3d 1324, 1339 (11th Cir. 2000). And the Defendants wholly fail to explain how the Minnesota Action—which involved claims for Breach of Fiduciary Duty (Count I), Misappropriation, Waste, and Misue of Assets (Count II), Conversion (Count III), Unjust Enrichment (Count IV), Civil Liability for Theft under MINN. STAT. § 604.14 (Count V), Civil Liability for Theft under MINN. STAT. § 609.53 (Count VI), Replevin (Count VII), Accounting (Count VIII), Constructive Trust (Count IX), and Injunctive Relief (Count X)—involved the same issue or cause of action as the Plaintiff's tortious-interference claim does here. Their conclusory statements that "the issue litigated in the Minnesota Action is identical to that in Count II" and that "[t]he 'cause of action' is likewise identical" is obviously insufficient to meet their burden here. MTD at 24; *see also In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001) ("At all times the burden is on the party asserting res judicata (here, Teledyne) to show that the later-filed suit is barred."); *Chavez v. Sec'y Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[J]udges are not required to ferret out delectable facts buried in a massive record[.]").

### b. The Plaintiff Fails to State a Claim for Tortious Interference

Still, we think the Plaintiff fails to state a viable tortious-interference claim here. Under Florida law, a claim for tortious interference with a business relationship has four elements: "(1) the existence of a business relationship that affords the Plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the Plaintiff." *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001). "The third element, intentional and unjustified interference with a business relationship, requires the plaintiff to allege that the defendant acted without justification." *Duty Free Am., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015) (quotation marks omitted). "This is a fact-intensive inquiry that requires an examination of the

defendant's conduct, its motive, and the interests it sought to advance." *Ibid.* Our Plaintiff fails this third element.

The Plaintiff's claim fails against Defendant Cruz because Cruz wasn't a "stranger" to the business relationship between Sherwin Williams and the Plaintiff. "For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 894 (11th Cir. 2025) (Marcus, J.). A party isn't a stranger if the party "has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." *Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009). As Core's Chief Operating Officer, *see* Compl. ¶ 25, Cruz wasn't a "stranger" to the Plaintiff's relationship with Sherwin Williams, *see Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) ("Under Florida law, a claim for tortious interference with contract cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party.").

"[A] non-stranger's conduct still may be actionable in a tortious interference claim in two situations: (1) if improper means are employed, or (2) if the motive for the actions is purely malicious and not coupled with any legitimate competitive economic interest." *Al Rushaid*, 159 F.4th at 895–96 (cleaned up). "Improper methods include physical violence, misrepresentations, illegal conduct, and threats of illegal conduct." *Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1214 (S.D. Fla. 2021) (Altman, J.) (cleaned up); *see also Hurchalla v. Lake Point Phase I, LLC*, 278 So. 3d 58, 66 (Fla. 4th DCA 2019) ("[A]llegations of the use of threats, intimidation, and conspiratorial conduct were indicative of malice" (quotation marks omitted)). And malice involves conduct "committed with ill will, hatred, spite, or an evil intent"—*i.e.*, "the subjective intent to do wrong." *Gay v. Jupiter Island Compound, LLC*, 358 So. 3d 780, 789–90 (Fla. 4th DCA 2023) (cleaned up); *see also Hurchalla*, 278 So.

3d at 66 ("[E]xpress malice is proven when the motive is characterized as out of spite, to do harm, or for some other bad motive." (quotation marks omitted)).

But our Complaint *doesn't* allege that Cruz interfered *either* with "the subjective intent to do wrong," *Gay*, 358 So. 3d at 789–90, *or* through "physical violence, misrepresentations, illegal conduct, and threats of illegal conduct," *Shenzhen*, 574 F. Supp. 3d at 1214; *see generally* Compl. The Plaintiff thus hasn't plausibly claimed that Cruz's interference was "intentional and unjustified." *Int'l Sales*, 262 F.3d at 1154.

As for the remaining Defendants, the Plaintiff never explains how the Defendants' interference was unjustified. "Crucially, in assessing whether a party's interference was unjustified, 'Florida recognizes a privilege of interference.'" *Shenzhen*, 574 F. Supp. at 1213 (quoting *Duty Free Ams.*, 797 F.3d at 1280). "This privilege of interference embodies the fundamental principle that a competitor can go after business for itself: 'there can be no claim for tortious interference with a business relationship where the action complained of is undertaken to safeguard or promote one's financial or economic interest.'" *Ibid.* (quoting *Gunder's Auto Ctr. v. State Farm Mut. Auto. Ins. Co.*, 422 F. App'x 819, 822 (11th Cir. 2011)). In our case, the Plaintiff bases its interference claim on the allegation that the Defendants stole the Plaintiff's customer (Sherwin Williams) for themselves. *See, e.g.*, Compl. ¶ 32 ("Austram and WTC entered into a contractual relationship with Sherwin Williams to supply ladders that infringe Core's patents and trademarks."); *id.* ¶ 33 ("Austram and WTC were allowed to, and did, present Core's patented and trademarked products to Mr. Young of Sherwin Williams at the 2021 Line Review after Core was disinvited to the same."). On the Plaintiff's own allegations, then, the privilege plainly applies.

But that doesn't end our analysis because this privilege to compete is "qualified." *Ernie*, 260 F.3d at 1294 n.9. In particular, the privilege can be overcome in two circumstances. "*First*, a party can overcome the competition privilege by proving that 'the defendant's motive was *purely* malicious.'"

14

*Shenzhen*, 574 F. Supp. 3d at 1213 (quoting *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004)). "*Second*, a tortious-interference claim can survive the privilege 'if improper methods were used.'" *Ibid.* (quoting *KMS*, 361 F.3d at 1327); *see also Duty Free Ams.*, 797 F.3d at 1280 (noting that interference is privileged "unless the [claimant] alleges a purely malicious motive divorced from any legitimate competitive economic interest" or "adequately alleges improper methods" (cleaned up)). "The idea (of course) is that, while companies may freely compete for business, that competition becomes tortious when it's grounded in an improper purpose or method." *Shenzhen*, 574 F. Supp. 3d at 1213.

Our Plaintiff alleges that the "Defendants intentionally and unjustifiably interfered with Core's advantageous business relationship with Sherwin Williams by contacting Mr. Young, preventing Core from attending 2021 Line Review, taking Core's place at the 2021 Line Review and presenting Core's patented products, and replacing Core as a vendor for the same products." Compl. ¶ 60. Two problems with this.

*First*, by its *own* allegations, the Plaintiff's business relationship with Sherwin Williams ended "[o]n or about March 16, 2021, [when] Sherwin Williams cancelled the remaining purchase orders." *Id.* ¶ 21. So, by the time the Defendants took "Core's place at the 2021 Line Review[,] [ ] present[ed] Core's patented products, and replac[ed] Core as a vendor for the same products," the business relationship had *already* ended. And the Defendants cannot "tortiously interfere" with a business relationship that no longer exists. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994) (holding that a party could not "recover for the loss of its goodwill with past customers under a tortious interference with a business relationship theory"); *see also ibid.* ([I]t is equally clear that [the Plaintiff's] relationship with its past customers was not one upon which a claim for tortious interference with a business relationship could be based. [The Plaintiff] had no identifiable agreement with its past customers that they would return to [the Plaintiff] to purchase furniture in the future.

The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim.").

*Second*, this leaves only the Plaintiff's allegations that the Defendants interfered by "contacting Mr. Young [and] preventing Core from attending 2021 Line Review[.]" Compl. ¶ 60. But it pleads no facts showing that these actions were "purely malicious" or that they occurred because of "improper methods." *Shenzhen*, 574 F. Supp. 3d at 1213. The Plaintiff thus hasn't shown that either exception to the competition privilege applies here.[7] We therefore **GRANT** the Motion to Dismiss Count II, though we'll give the Plaintiff leave to file an amended complaint that beefs up the allegations in this count.

### V.     Count III: Patent Infringement

#### a.     The Plaintiff Fails to Comply with the Pre-Suit Marking Notice

The Defendants next argue that the patent marking statute, 35 U.S.C. § 287(a),[8] "bars patentees from recovering damages if they did not mark their patented items or otherwise notify infringers of the alleged infringement," *Shenzhen Hengzechen Tech. Co. v. Individuals, P'ships, & Uninc. Ass'ns identified*

---

[7] The Plaintiff also doesn't tell us how the Defendants interfered with the relationship. We don't, for instance, know *how* "contacting Mr. Young" interfered with the Plaintiff's business relationship, *how* the Defendants (or even which Defendants) "prevent[ed] Core from attending [the] 2021 Line Review," or *what* actions the Defendants took to "intentionally and unjustifiably interfere" with that relationship.

[8] Section 287(a) provides, in pertinent part, as follows:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

*on Schedule "A"*, 2024 WL 475269, at *2 (S.D. Fla. Feb. 7, 2024) (Scola, J.). In this section of their brief, the Defendants contend that the Plaintiff *both* "neglects to plead compliance with the marking statute" *and* "fail[s] to adequately allege[ ] that it provided notice to [the] Defendants because it does not allege when each Defendant became aware of the '912 Patent with specificity." MTD at 17. The Plaintiff counters with two arguments. *First*, it says that "whether a party has complied with the marking statute is a question of fact and is not suitable for a motion to dismiss." Resp. at 11. *Second*, it insists that it "has plead [sic] both in the Complaint." *Ibid.*

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover damages." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017) (citing *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)). "[T]he duty of alleging and the burden of proving either [actual or constructive notice] is upon the [patentee]." *Dunlap*, 152 U.S. at 248. The Federal Circuit has been clear that "an infringer's knowledge alone is insufficient; the statute requires the patentee to affirmatively mark the patent or provide notice to the infringer." *Artic Cat*, 950 F.3d at 866–67. "If a patentee who makes, sells, offers for sale, or imports his patented articles has not 'given notice of his right' by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice." *Id.* at 866 (quoting *Dunlap*, 152 U.S. at 248). In other words, a patentee "is entitled to damages from the time when it either began marking its products in compliance with section 287(a) or when it actually notified [the infringer] of its infringement, whichever was earlier." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993). "Section 287 is thus a limitation on damages, and not an affirmative defense." *Ibid.*

As an initial matter, we reject the Plaintiff's first argument that "whether a party has complied with the marking statute is a question of fact and is not suitable for a motion to dismiss." Resp. at 11. "Even though a Plaintiff 'need not prove its case at the pleading stage,' Plaintiffs do have the

affirmative obligation to plead compliance with the notice requirements of the marking statute." *Shenzhen*, 2024 WL 475269, at \*2 (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1346 (Fed. Cir. 2021); *see also Artic Cat*, 876 F.3d at 1366 ("The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement."). "The duty falls on Plaintiffs because whether patented items have been marked is 'a matter peculiarly within the patentee's own knowledge." *Artic Cat*, 876 F.3d at 1366 (quoting *Dunlap*, 152 U.S. at 248). Our question at this stage, then, is whether the Plaintiff has pled "compliance with the notice requirements of the marking statute." *Shenzhen*, WL 475269, at \*2. It has not.

Indeed, the Complaint says nothing about whether the Plaintiff's products included the required patent markings. In its Response, the Plaintiff says that its "patented products contain the required patent markings for the [']912 Patent and [claims that it] alleges as such in its Complaint." Resp. at 11 (citing Compl. ¶¶ 31, 34, 35). Two problems with this. *First*, the paragraphs the Plaintiff cites say *nothing* about the marking statute. What they do say is that the Defendants sold ladders "covered by Core's [']912 Patent," Compl. ¶ 31; that the Defendants' infringing products "had their trademarked labels affixed," *id.* ¶ 34; and that "no effort was made in designing the [infringing products] to avoid infringing on the [']912 patent," *id.* ¶ 35. None of these allegations show compliance with the marking statute. For one thing, whether the products contained a *trademark* label is beside the point. Section 287(a) requires products to display a "mark," which the statute defines as including "the word 'patent' or the abbreviation 'pat.', together with the number of the patent, or . . . with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent[.]" § 287(a). And the Plaintiff doesn't tell us whether its trademark labels included all of these requirements. For another, "[i]n determining whether the patentee marked its products sufficiently to comply with the constructive notice requirement, the focus is not on what the infringer actually knew, but on whether the patentee's

18

actions were sufficient, in the circumstances, to provide notice *in rem*." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). The Defendants' *subjective* knowledge that the alleged product was "covered by Core's [']912 Patent" and their concomitant failure to "avoid infringing on the '912 patent" are thus irrelevant to our core inquiry—which is whether the Plaintiff complied with the patent marking statute.

*Second*, "a plaintiff cannot amend her faulty complaint through her response to a motion to dismiss." *Amaya v. Vilsack*, 2024 WL 1285162, at *4 (S.D. Fla. Mar. 26, 2024) (Altman, J.); *see also Wilchombe.*, 555 F.3d at 959 ("A court's review on a motion to dismiss is limited to the four corners of the complaint."). So, the Plaintiff's *post hoc* argument that its "patented products contain the required patent markings for the [']912 Patent and [its claim that it] alleges as such in its Complaint," Resp. at 11, doesn't cure the Complaint's deficiency on this vital point.

We therefore find that the Plaintiff hasn't shown that it complied with the patent marking statute—though we'll grant the Plaintiff leave to fix this defect.

### b.  The Plaintiff May Only Recover Damages After Actual Notice

Because the Complaint is "silent as to the Plaintiff's marking of the patent, [ ] the Court turns to whether the Plaintiff alleged that it provided notice to the Defendants." *Shenzhen*, 2024 WL 475269, at *2. And the Plaintiff does allege that, through the Infringement Letter, it gave Defendants WTC, Alexander Joch, and Fred Joch (the recipients of that letter) actual notice of their infringement on April 8, 2024.[9] *See* Infringement Letter; *see also* Compl. ¶ 45 ("Core's counsel sent correspondence to the Defendants notifying them that their Austram ladder infringes Core's '912 Patent.").

---

[9] We may consider the Infringement Letter in adjudicating the Motion to Dismiss because the Plaintiff attached it to the Complaint. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss[.]").

The Federal Circuit has "explained that as long as the communication from the patentee provides sufficient specificity regarding its belief that the recipient may be an infringer, the statutory requirement of actual notice is met." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345–46 (Fed. Cir. 2001). "[L]etters that specifically identify a product and offer a license for that product do constitute actual notice." *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376 (Fed. Cir. 2008). And the Infringement Letter does just that. *See* Infringement Letter at 2 (identifying "United States Patent, no. US 10,053,912 B2" and stating that WTC "is selling a ladder, the Austram Telescoping Ladder, that infringes Core Distribution's [']912 Patent"). The Plaintiff has therefore adequately pled that it gave Defendants World Trade, Alexander Joch, and Fred Joch *actual* notice of their infringement on April 8, 2024.

But the Plaintiff never alleges that it gave actual notice to Defendants Christopher Joch or Austram. As for Defendant Cruz, the Plaintiff argues that it didn't need to plead actual notice because "Defendant Cruz [ ] had direct knowledge of the patent due to his previous employment with Core." Resp. at 11. "Such a fact," the Plaintiff insists, "serves to show pre-suit knowledge of the patent to support the claim of willfulness." *Ibid.* Again, though, as we've explained, "[i]t is irrelevant under § 287 whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under § 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1360 (Fed. Cir. 2021); *see also Am. Med. Sys.*, 6 F.3d at 1537 ("Absent notice, the [infringer's] 'knowledge of the patents' is irrelevant."); *Devices for Med. Inc. v. Boehl*, 822 F.2d 1062, 1066 n.18 (Fed. Cir. 1987) ("The notice of infringement must therefore come from the patentee, not the infringer.").

Defendants Christopher Joch, Cruz, and Austram thus never received pre-suit notice of their infringing activities. "In the event of a lack of pre-suit notice, a Plaintiff can only recover damages for infringement that occurs following the filing of the lawsuit." *Shenzhen*, 2024 WL 475269, at *3 (citing *Arctic Cat*, 950 F.3d at 866-67); *see also Lubby*, 11 F.4th at 1361 ("Damages thus can only be awarded

for infringing units sold after the filing of the lawsuit."); § 287(a) ("Filing of an action for infringement shall constitute [actual] notice.").

* * *

We therefore **DISMISS** the Plaintiff's claim for damages as to Defendants WTC, Alexander Joch, and Frederick Joch before April 8, 2024, the date of the Infringement Letter, and as to Defendant Christopher Joch, Cruz, and Austram before October 23, 2024, when this lawsuit was filed. Of course, if the Plaintiff manages to properly allege compliance with the marking statute in its amended complaint, then it will have satisfied its burden of advancing a claim for constructive notice. (at least for now)

### c.   Count III Fails to State a Claim Against the Individual Defendants

We turn, then, to the merits of Count III. The Complaint alleges that the "Defendants have infringed and continue to infringe the [']912 Patent by making, using, selling, and/or offering for sale in the U.S., and/or importing into the U.S., the Austram ladder." Compl. ¶ 65. The Defendants argue that the Plaintiff "does not plead that any Individual Defendant committed acts of patent infringement independent from the Corporate Defendants' sales of ladders, so Count III should be dismissed as to the Individual Defendants under Rule 12(b)(6)[.]" MTD at 10. The Plaintiff's disagree, responding that "[t]he Complaint alleges the wrongful acts committed by Defendants individually and through the corporate entities in which they are affiliated." Resp. at 12. And, they say, "the individual defendants may still be found liable for wrongful conduct even though they are agents or employed by a corporation when they are acting for their own personal motivations." *Ibid.* We agree with the Defendants and **DISMISS** Count III as to the Individual Defendants.

In adjudicating a motion to dismiss a patent claim under Rule 12(b)(6), we apply the law of the Federal Circuit. *See AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024) ("We apply our own law to the specific question of whether a complaint states a claim of patent infringement on

21

which relief may be granted."). "A plaintiff is not required to plead infringement on an element-by-element basis." *Bot*, 4 F.4th at 1352. "Instead, it is enough that a complaint places the alleged infringer on notice of what activity is being accused of infringement." *Adnexus Inc. v. Meta Platforms, Inc.*, 160 F.4th 1216, 1221 (Fed. Cir. 2025). "Still, 'there must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Ibid.* (quoting *Bot*, 4 F.4th at 1353).

> **i.      The Complaint doesn't sufficiently allege that the Individual Defendants infringed the Plaintiff's patent.**

We agree with the Defendants that the Plaintiff "does not plead that any Individual Defendant committed acts of patent infringement independent from the Corporate Defendants' sales of ladders[.]" MTD at 10. "'Patent infringement is a tort,' and 'in general, a corporate officer is personally liable for his tortious acts, just as any individual may be liable for a civil wrong.'" *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (first quoting *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1365 (Fed. Cir. 2008); and then quoting *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1411 (Fed. Cir. 1996)). In our case, the Complaint alleges only that WTC and Austram (our Corporate Defendants) offered to sell, and then sold, the Plaintiff's patented products in violation of § 271(a). *See* Compl. ¶ 33 ("Austram and WTC were allowed to, and did, present Core's patented and trademarked products to [ ] Sherwin Williams at the 2021 Line Review[.]"); *id.* ¶ 39 "[Sherwin Williams] entered into a vendor agreement with WTC and Austram for significant orders of products which infringe Core's intellectual property."); *see also* 35 U.S. § 271(a) ("[W]however without authority . . . offers to sell, or sells any patented invention, within the United States . . . infringes the patent."). But the Complaint *never* says that any of the Individual Defendants "makes, uses, offers to sell, or sells any patented invention, within the United States[.]" *Ibid.* The Plaintiff has therefore failed to plausibly allege that any Individual Defendant violated § 271(a) such that he may be held "personally liable for his tortious acts[.]" *Wordtech*, 609 F.3d at 1313.

ii. **The Plaintiff hasn't alleged sufficient facts to allow us to pierce the corporate veil.**

The Complaint alleges that "unity of interest and ownership existed between WTC, Austram, A. Joch, F. Joch, C. Joch, and Cruz such that any individuality and separateness between them ceased, and they each individually operated as the alter egos of one another." Compl. ¶ 41. Although the Complaint never proceeds to ask us to pierce the corporate veil in any of its counts, the Defendants covered all their bases by arguing that the Plaintiff "has not alleged facts requisite for [a veil-piercing] determination." MTD at 27. And the Plaintiff made everyone's life easier by not addressing this argument at all in their response. The closest it gets is its suggestion that "[t]he Complaint alleges the wrongful acts committed by Defendants individually and through the corporate entities in which they are affiliated." Resp. at 12. We can hardly read this conclusory and generic sentence as meeting the Plaintiff's burden of pleading alter-ego liability. After all, the Plaintiff tells us nothing about the corporate structure of *either* WTC or Austram, it never alleges that the Individual Defendants disregarded the corporate form, it never says what the Individual Defendants' roles at either company were, and it never details how or why the Defendants (in its view) "operated as the alter egos of one another." Compl. ¶ 41. That's plainly insufficient.[10] *See Elof Hansson Paper & Bd., Inc. v. Caldera*, 2011 WL 13115561, at *4 (S.D. Fla. Sept. 6, 2011) (Ungaro, J.) ("Conclusory allegations will not suffice to state a claim based upon an alter-ego theory of liability. Rather, the plaintiff must set forth facts demonstrating that the corporate form should be ignored."); *SD3, LLC v. Black & Decker (U.S.) Inc.*,

---

[10] "It is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable—to 'pierce the corporate veil'—the plaintiff must prove that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011). Our Plaintiff's Complaint alleges none of these things.

801 F.3d 412, 423 (4th Cir. 2015*), as amended on reh'g in part* (Oct. 29, 2015) ("SawStop nakedly alleges only that all of the corporate subsidiaries are 'dominated by, and are alter egos of,' these corporate parents. That allegation offers only a legal conclusion, and SawStop has alleged no facts suggesting the kind of unity of interests that we usually require a party to plead before permitting them to advance an alter ego theory." (cleaned up)).

We therefore **DISMISS** Count III as to the Individual Defendants.[11]

### VI.    Count I Fails to State a Plausible Claim for Civil Conspiracy

Finally, we turn to Count I, which alleges that the "Defendants are parties to a civil conspiracy" and "conspired to do an unlawful act or to do a lawful act by unlawful means." Compl. ¶¶ 51, 52. In this count, the Plaintiff claims that the "Defendants conspired to usurp Core's corporate opportunity and infringe upon the [']912 Patent, thereby doing economic harm to Core." *Id.* ¶ 53. And it says that the "Defendants committed an overt act in furtherance of their conspiracy, including attending the 2021 Line Review in place of Core and presenting Core's own patent protected products to Sherwin Williams with Core's trademarks affixed." *Id.* ¶ 55. The Defendants urge us to dismiss Count I because the Plaintiff "fails to allege any agreement among the Defendants—let alone all of them—to take an unlawful action." MTD at 17. For two reasons, we agree.

*First*, the Plaintiff fails to identify an underlying tort. "Florida does not recognize an independent cause of action for civil conspiracy." *Siegmund v. Xuelian Bian*, 2018 WL 1611197, at *14 (S.D. Fla. Apr. 2, 2018) (Moreno, J.). "Rather, civil conspiracy is a derivative action that arises out of

---

[11] One last thing: Section 271 provides "three forms of liability": "improper inducement[,] . . . direct infringement[,] and contributory inducement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 638 (2015). "Subsection (a) governs direct infringement[.]" *Ibid.* "Subsection (b) governs induced infringement[.]" *Id.* at 639. "Subsection (c) deals with contributory infringement[.]" *Ibid.* If the Plaintiff repleads its patent-infringement claim against the Individual Defendants, it must specify *which* subsection its claims arise under as to *each* Defendant and then separate its claims under each subsection into separate counts.

an independent actionable claim." *Ibid.*; *see also Rushing v. Bosse*, 652 So. 2d 869, 875 (Fla. 4th DCA 1995) ("In order to plead a cause of action for civil conspiracy there must be an underlying independent wrong or tort."). And our Plaintiff hasn't pled an underlying tort for two reasons. For one thing, "conspiracy to infringe a patent [is] a theory which has no basis in law." *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1361 (Fed. Cir. 2004). For another, we've already dismissed the Plaintiff's tortious-interference claim. *See supra* IV. So, the Plaintiff is left with no "underlying independent wrong or tort" and thus cannot assert its civil-conspiracy claim. *Rushing*, 652 So. 2d at 875.

*Second*, even if the Plaintiff had successfully pled a tortious-interference claim in Count III, the Complaint doesn't sufficiently allege an illegal agreement among the Defendants. "[U]nder Florida law, pleading a civil conspiracy requires alleging '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" *Karnas v. Cuban*, 2025 WL 3759241, at *12 (S.D. Fla. Dec. 30, 2025) (Altman, J.) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)). Our Plaintiff falters at the first step.

As we've highlighted, the Plaintiff alleges in only the most conclusory way that the Defendants interfered with its business relationship with Sherwin Williams. *See, e.g.*, Compl. ¶ 36 ("Mr. Young and other former employees of Core (who all now work for WTC and/or Austram in some capacity) have conspired to destroy Core's longstanding advantageous business relationship with Sherwin Williams and effectively replace Core with Austram and WTC."); *id.* ¶ 37 ("[The] Defendants (acting with the assistance of Mr. Young) have actively interfered with and caused the wrongful termination of purchase orders to Core placed by Sherwin Williams."). "[T]hese bare-bones descriptions lump all the parties into a single entity without establishing *any* coordinated action." *Karnas*, 2025 WL 3759241, at *13 (cleaned up); *see also Parisi v. Kingston*, 314 So. 3d 656, 662 (Fla. 3d DCA 2021) (finding allegations

"not sufficiently clear and specific as to the existence of a civil conspiracy" because "[t]he pleading vaguely ties the events together by alleging, in conclusory fashion, that the circumstances unfolded pursuant to an agreement"). "To allege a conspiracy, a plaintiff must make particularized allegations that are more than vague or conclusory." *Albra v. City of Ft. Lauderdale*, 232 F. App'x 885, 891 (11th Cir. 2007) (cleaned up). Our Plaintiff hasn't done that here. We therefore **GRANT** the Motion to Dismiss Count I.

## CONCLUSION

The Plaintiff must do better in its amended complaint. "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366–67 (11th Cir. 1996). To avoid these problems, we'll give the Plaintiff **one** more chance to replead its claims—this time with facts and not just legal conclusions. But the Plaintiff will be given no more chances. If we dismiss its amended complaint, we *will* dismiss it with prejudice.

***

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion to Dismiss [ECF No. 27] is **GRANTED**.

2. Counts I & III of the Complaint [ECF No. 1] are **DISMISSED without prejudice**. Count III is **DISMISSED without prejudice** as to Defendants Christopher Joch, Alexander Joch, Frederick Joch, and Francisco Cruz.

3. If the Plaintiff wants to file an amended complaint, it must do so by **June 4, 2026**.

27

**DONE AND ORDERED** in the Southern District of Florida on May 7, 2026.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

27